United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENNA COLLIN,<br>Plaintiff,<br>v.<br>HID GLOBAL CORPORATION,<br>Defendant. | Case No. 26-cv-08982-WHO<br><br>**ORDER ON MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 17, 18 |

Defendant HID Global Corporation ("HID") moves to compel plaintiff Brenna Collin ("Collin") into arbitration pursuant to an arbitration agreement Collin signed prior to beginning her employment at HID. Collin opposes arbitration, arguing that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") allows her to bring her claims in federal court and bypass the arbitration agreement. Because the declaration Collin filed with her opposition alleges facts that, if pleaded in her complaint, may plausibly give rise to a sexual harassment claim and trigger the EFAA, HID's motion to compel arbitration is DENIED without prejudice and Collin is GRANTED leave to amend her complaint.[1]

## BACKGROUND

### 1. Factual Background

On September 5, 2022, Collin began her employment as a Product Designer for HID. Complaint ("Compl.") [Dkt. No. 17-4] ¶ 10. While employed at HID, Collin was promoted multiple times, eventually serving as a Product Design Manager. *Id.* ¶ 11. Despite her positive performance record, Collin alleges that she was "subjected to a pattern of differential treatment by

[1] Under Civil Local Rule 7-1(b), I find this matter appropriate for resolution without oral argument and VACATE the October 28, 2026 hearing.

United States District Court
Northern District of California

male executives, vice presidents, product managers, and product owners who consistently excluded her from decision-making processes, declined meetings with her, and failed to engage with her work as they would with male colleagues." *Id.* ¶ 13.

For example, in April 2025, Collin's supervisor requested that she send a company-wide email to product managers regarding a compliance deadline for shipping products; after she sent the email, the business unit vice president "reprimanded [her] and characterized the communication as inappropriate." *Id.* ¶ 15. When Collin asked for feedback from her supervisor, the supervisor denied directing her to send the email, placing the blame entirely on her. *Id.*

Later, in December 2025, Collin sustained "serious physical injuries" and suffered post-traumatic stress disorder after being involved in a car accident. *Id.* ¶ 16. Collin was placed on leave due to the accident. *Id.* ¶¶ 16–17. HID "deactivated [Collin's] computer access without prior notice, preventing her from communicating her leave status to her direct reports or ensuring an orderly transition of her responsibilities." *Id.* ¶ 17. During her leave period, Collin's physician and HID's human resources team communicated regarding her return to work and accommodation needs. *Id.* ¶ 18. HID confirmed with Collin that her accommodations upon return would include the ability to continue working remotely as well as additional time for specific planning activities. *Id.* Collin returned to work in April 2026. *Id.* ¶ 19. Her physician approved a "six-week return-to-work accommodation period, specifying that [Collin] was to receive extended deadlines on assignments and that high-conflict escalations were to be directed to her supervisor." *Id.*

On April 23, 2026, sixteen days after her return to office, Fatima Santiago (Director, People Partner Americas for HID) contacted Collin and represented that the "scheduled call was a follow-up to her protected medical leave." *Id.* ¶ 20. When Collin joined the call, however, Santiago "abruptly terminated [her] employment." *Id.* Santiago explained that the basis for termination was performance-based and presented a document that outlined her performance deficiencies. *Id.* Collin was not provided with a copy of the document. *Id.*

Collin also filed a declaration further explaining her allegations. *See* Declaration of Brenna Collin ("Collin Decl.") [Dkt. No. 21-1]. In her declaration, Collin alleges that she "repeatedly encountered interruption, mocking, and dismissive responses from Nitin Parihar and

United States District Court
Northern District of California

other male product stakeholders" over a "significant portion of [her] employment." Collin Decl. ¶ 4. For example, while product owners would not respond to Collin's requests for meetings to obtain information necessary for her work, her male direct reports "had no issues obtaining meetings." *Id.* ¶ 5. Further, Collin alleges that she "personally observed more favorable reception when [her] male direct reports presented work [she] had directed, reviewed, or helped develop." *Id.* ¶ 7. This forced her to hand her work to her male direct reports, as it "became clear that Nitin's team only accepted suggestions from male direct reports." *Id.* ¶ 9.

Collin also notes that in September 2024, Nitin "yelled at [her] in a one-on-one meeting after making suggestions that had been made by male counter parts who did not get yelled at for the suggestions." *Id.* ¶ 10. She experienced a similar incident from January to May 2025, when an "agile train lead" at HID characterized her contributions to a project as "inappropriate or outside the process." *Id.* ¶ 12. The agile train lead yelled at Collin, an experience she alleges never happened to her male direct reports. *Id.*

**2. Procedural History**

On July 24, 2026, Collin filed her complaint against HID in the Superior Court of Alameda County, alleging workplace discrimination, sexual harassment, wrongful termination, and a variety of other claims arising out of her employment at HID. *See* Complaint ("Compl.") [Dkt. No. 17-4]. HID removed the case on August 26, 2026. *See* Notice of Removal [Dkt. No. 1]. HID then filed a motion to compel arbitration on September 17, 2026. *See* Motion to Compel Arbitration ("Mot.") [Dkt. No. 17]. Collin filed an opposition on October 1, 2026. *See* Opposition to Motion to Compel Arbitration ("Oppo.") [Dkt. No. 21]. HID replied on October 8, 2026. *See* Reply in Support of Motion to Compel Arbitration ("Repl.") [Dkt. No. 22].

## LEGAL STANDARD

"[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to

which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ferguson v. Corinthian Colls, Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (citation omitted).

**DISCUSSION**

In deciding whether to compel arbitration, courts must generally determine whether (1) there is an agreement to arbitrate between the parties; and (2) the agreement covers the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Here, there is no dispute that Collin and HID agreed to arbitrate, that the Federal Arbitration Act governs their agreement, or that, barring the EFAA, all of Collin's claims would fall under that agreement. *See, e.g.*, Declaration of Fatima Santiago in Support of HID's Motion to Compel [Dkt. No. 17-2] (outlining facts showing Collin entered an arbitration agreement); Mutual Agreement to Arbitrate [Dkt. No. 17-5] ¶ 3 (indicating that Collin and HID's arbitration agreement "covers any dispute . . . that could otherwise be brought in a court of law, including . . . claims for . . . wrongful termination or discharge, constructive termination or discharge, retaliatory discharge, [and] unlawful discrimination and/or harassment[] (including but not limited to race, sex, national origin, religion, age, disability, genetic information, marital status, sexual orientation, or any other protected status under federal, state or local law)").

Where the parties disagree is whether the EFAA covers this dispute. The EFAA provides, in relevant part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The EFAA accordingly "creates an express exception to the FAA's requirement that an arbitration agreement 'shall be valid, irrevocable, and enforceable.'" *Ding v.*

*Structure Therapeutics, Inc., NASDAQ*, 187 F.4th 1231, 1236 (9th Cir. 2026) (quoting 9 U.S.C. § 2). Plaintiffs who "elect to render a predispute arbitration agreement invalid and unenforceable" may ultimately pursue their claims in court. *Id.* (cleaned up). "A plaintiff bears the burden of establishing that an arbitration agreement may be invalidated pursuant to the EFAA." *Wynn-Williams v. Meta Platforms, Inc.*, No. 26-cv-06341-AMO, 2026 WL 2621253, at *9 (N.D. Cal. Sept. 4, 2026) (Martínez-Olguín, J.) (citing *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1207 (N.D. Cal. 2024) (Corley, J.)).

While the parties agree that the Ninth Circuit's analysis of the EFAA in *Ding v. Structure Therapeutics, Inc.*, 187 F.4th 1231 (9th Cir. 2026), controls, they dispute whether Collin has plausibly alleged sexual harassment under *Ding*. Generally, to plead sexual harassment, a plaintiff must show "(1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013). *Ding* makes clear, however, that the disparate treatment of an employee on the basis of sex may form a sexual harassment claim and that a hostile environment can exist when the alleged conduct is not sexual in nature. *See Ding*, 187 F.4th at 1239–40 (collecting cases).

I agree with HID that, as pleaded, there are not enough facts in the complaint to support a claim for sexual harassment. But I will allow Collin to amend her complaint to state the numerous instances involving Parihar and other male executives described in her declaration that, combined with the other allegations in the complaint, may plausibly give rise to a claim for sexual harassment under *Ding* and trigger the EFAA. *See* Collin Decl. ¶¶ 4–12. Accordingly, I GRANT Collin leave to amend under Rule 15(a)(2) to incorporate the allegations from her declaration into her complaint. HID's motion to compel is DENIED without prejudice in the event HID believes it is meritorious after reviewing the amended complaint. Not to put too fine a point on this, however, I am inclined to think that the additional facts stated in Collin's Declaration, if added to the complaint, will trigger the EFAA.

**CONCLUSION**

For the reasons set forth above, HID's motion to compel is DENIED. Collin shall have

United States District Court
Northern District of California

twenty (20) days from this order to amend her complaint.[2]

**IT IS SO ORDERED.**

Dated: October 27, 2026



William H. Orrick
United States District Judge

[2] HID's motion for administrative relief from General Order 71, *see* Dkt. No. 18, is DENIED as moot in light of this order.